UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 05-61821-CIV-ZLOCH/SNOW

JACKIE WARD, an individual,

Plaintiff,

v.

ESTALEIRO ITAJAI S/A, a METALNAVE COMPANY, a Brazilian Company, FRANCISCO WLASEK, an individual and PAULO ROLIM, an individual,

Defendants.

_______________________________________/

**DEFENDANTS' OMNIBUS MEMORANDUM IN RESPONSE TO PLAINTIFF'S MOTIONS IN LIMINE ONE THROUGH FOUR, SIX AND SEVEN**

Defendants Estaleiro Itajai S/A ("Estaleiro"), Francisco Wlasek, and Paulo Rolim, submit this memorandum in response to six of Plaintiff Jackie Ward's seven motions in limine of February 8, 2008, and state their grounds as follows:

**INTRODUCTION**

This omnibus response is to six of the seven motions in limine filed by the Plaintiff, which totaled over three hundred pages of argument and exhibits. Defendants herein oppose Plaintiff's first motion (on Estaleiro's damages evidence), second motion (agency relationship of Jim Eden), and seventh motion (use of federal judgment interest tables). Defendants do not seek to introduce evidence identified in Plaintiff's third motion (Plaintiff's net worth) for the purposes complained of by Plaintiff. Defendants do not oppose Plaintiff's fourth or sixth motions (evidence of prior lawsuits and testimony of Meghan Cassidy) in their entirety. Finally, as to Plaintiff's fifth motion in limine, which seeks to prevent Defendants from calling

Andrew Mychalowych as a witness, a separate memorandum will be filed in opposition to the motion.

**FIRST MOTION TO EXCLUDE ESTALEIRO'S DAMAGES EVIDENCE [D.E. 164]**

Plaintiff is incorrect that Estaleiro will argue at trial that Plaintiff abandoned the agreement, resulting in Estaleiro's termination under Article 19 of the Vessel Construction Agreement. Rather, as has been made quite clear over the course of this litigation, it is Estaleiro's contention that Plaintiff prevented Estaleiro's performance under the Vessel Construction Agreement – assuming an enforceable contract ever existed at all – and that Estaleiro was ready, willing and able to perform under the agreement until and including the time of Plaintiff's termination under Article 20. While Dr. Lobo did send a letter referencing Article 19, the letter was sent after Plaintiff's own letter of September 15, 2005, already (wrongfully) terminating under Article 20.

Furthermore, even if Estaleiro's ability to *recover* certain damages was limited by Article 19, this does not mean that Estaleiro should be prevented from *proving* those damages in order to secure its status as a prevailing party on its counterclaim. Certainly Plaintiff offers no authority to the contrary. What Plaintiff really appears to be asking for here, as in most of her motions "in limine," is for partial summary judgment on the application of an abstruse passage of the Vessel Construction Agreement to the heavily disputed facts of this case. But it is improper to attempt to use a motion in limine to achieve such a result. *See Buy-Low Save Centers, Inc. v. Glinert*, 547 So. 2d 1283, 1284 (Fla. 4th DCA 1989) (citing cases, and reversing grant of motion in limine amounting to improper summary judgment on damages calculation). If Plaintiff is correct that Estaleiro's damages are limited as a matter of law, this would be the appropriate subject of a motion to amend a verdict.

It is important to distinguish here between the attorneys' fees Estaleiro is claiming as damages based on Plaintiff's breach of contract – the fees incurred in order to negotiate and perform the contract – and the attorneys' fees Estaleiro will seek as a prevailing party in this litigation.

Plaintiff herself seeks exactly the same sort of fees-as-damages, and intends to support them with the same evidence Estaleiro will present: namely, her testimony that she paid them, as Estaleiro's witnesses will testify it paid Dr. Lobo's fees. To the extent their amount may be unreasonable, Estaleiro's evidence will be subject to the same challenge as Plaintiff's: cross-examination.

Of course, Estaleiro's request for fees incurred in the course of the current litigation will be submitted in a timely manner and in the form required by this district. But that is a separate issue.

Therefore, Plaintiff's motion to limit evidence, examination and testimony on this point should be DENIED.

**SECOND MOTION TO EXCLUDE EVIDENCE THAT JIM EDEN WAS PLAINTIFF'S AGENT [D.E. 165]**

Plaintiff takes the position that because, during this litigation, Andrew Mychalowych has "expressly stated" that Jim Eden wasn't Plaintiff's agent, Defendants should not be able to introduce evidence concerning this, or inquire into the matter at trial. While Mr. Mychalowych's statement may be evidence of some sort – and perhaps a matter he will need to be examined about when he takes the stand – it is hardly conclusive of the question of agency. Nor is the fact that Jim Eden was identified as a person to be carbon copied on Article 23 notices to Estaleiro. *See Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 854 (Fla. 2003) (rejecting theory that contract description is determinative of agency); *Sussman v. First Fin. Title Co. of*

*Fla.*, 793 So. 2d 1066, 1068 (Fla. 4th DCA 2001) (observing that question of whether purported agent worked for one party or the other or neither could not be resolved by reference to descriptive language in letter).

Agency, which may be implied by a course of dealings, and inferred even in the absence of an explicit agreement, is a factual determination for the jury to make. *See Overseas Private Inv. Corp. v. Metropolitan Dade County*, 826 F. Supp. 1564, 1576 (S.D. Fla. 1993) (Nesbitt, J.), *aff'd in part, rev'd in part on other grounds*, 47 F.3d 1111 (11th Cir. 1995). Certainly Jim Eden is quite clear in his mind that he acted on behalf of Ward and Sumo Yachts. Eden wrote to Mr. Mychalowych on December 16, 2004, and told him so:

> I think for clarification purposes I should explain my position in this transaction. I have, from the very first day, represented Jackie Ward in these negotiations NOT Metalnave or Itajai Shipyard.... I chose to be paid by the Shipyard as did Evan Marshall and Murray & Associates in order to reduce Jackie's exposure to risk.

Depo. Ex. 22 [D.E. 137]. Eden also confirmed at his deposition that he acted as her agent. *See* Depo. of Jim Eden [D.E. 131] at 20:4-20:10. *See Rhodes v. Edward K. Tryon Co.*, 182 So. 301, 301 (Fla. 1938) (allowing agent's parol statement to prove agency, and noting that an agent is a competent witness to prove his role). But even where both the agent and the principal deny their relationship, the jury may decide otherwise. *See Overseas*, 826 F. Supp. at 1576.

Eden's agency is a factual dispute that the jury will resolve based on the evidence, including the evidence that Ward and Eden had a relationship pre-existing either's relationship with Estaleiro, that Eden was retained by Sumo Yachts to visit Brazil and investigate the shipyard on Ward's behalf, that Eden helped negotiate the Vessel Construction Agreement on behalf of Sumo Yachts and helped to draft its terms on behalf of Sumo Yachts, and that Eden continues to act as Sumo Yachts' agent with regard to the sale of Ward's current vessel. The

question cannot be resolved as a matter of law. *See Villazon*, 843 So. 2d at 853 (explaining agency must be evaluated based on "totality of circumstances"); *Stone v. Palms West Hosp.*, 941 So. 2d 514, 520-21 (Fla. 4th DCA 2006) (reversing summary judgment where jury question presented of apparent agency); *Sears Roebuck & Co. v. Williams*, 877 So. 2d 5, 6 (Fla. 3d DCA 2004) ("Where … the record reflects that different inferences can be made as to an agency relationship, summary judgment is improper.").

Plaintiff's ancillary argument, that a request for further assurances under Article 32 of the Vessel Construction Agreement required the sort of "notice" described in Article 23 of the agreement, is also not appropriate for a motion in limine, and furthermore is without legal or factual foundation.

Therefore, Plaintiff's motion to limit evidence, examination and testimony on this point should be DENIED.

**THIRD MOTION TO EXCLUDE EVIDENCE OF PLAINTIFF'S NET WORTH [D.E. 166]**

Defendants do not intend to engage in any extended examination regarding Plaintiff's financial condition, other than as may be necessary to show that she is a sophisticated business person, experienced in the banking industry, whose advice is widely sought and well compensated. This limited inquiry goes directly to her commercial sophistication and her understanding of the financing terms disclosed to her by Defendants, which in turn will inform the jury's evaluation of her good faith in the performance of the Vessel Construction Agreement. Defendants do not intend to contrast Plaintiff's personal fortune with Defendant's means, or to argue that her great wealth should affect the jury's consideration of punitive damages, should they ever be presented with that question.

Therefore, Plaintiff's motion to limit evidence, examination and testimony on this point should be DENIED.

**FOURTH MOTION TO EXCLUDE EVIDENCE OF PRIOR LAWSUIT [D.E. 167]**

Defendants themselves agree that prior litigation of the parties is not relevant to the instant case, for the reasons stated in their own motion to limit evidence relating to certain other actions. *See* Def.'s Motion in Limine [D.E. 168] at 8-9. Defendants do not intend to introduce evidence concerning the litigation between Ms. Ward or Sumo Yachts and Canteri de Pisa at trial, unless necessary to impeach evidence offered by Plaintiff.

Of course, Defendants do not agree that they should be barred from eliciting any testimony regarding any of Plaintiff's prior experience negotiating or effectuating the purchasing of yachts, or dealing with yacht brokers or Mr. Eden. Among other things, such evidence goes to the question of Eden's agency.

And Defendants respectfully suggest that they should be able to use the sworn testimony of witnesses appearing in this case, offered in the context of prior litigation, to the extent it may be necessary to impeach, to refresh recollection, or as otherwise may be permissible under the rules of evidence. Defendants believe this can be accomplished without referring to specifics of any prior litigation, or to any award granted or attorney fees incurred therein.

Because Defendants do not intend to refer to those aspects of prior litigation which Plaintiff finds objectionable, their use of other evidence related to that litigation cannot be more prejudicial than probative, and Rule 403 is not implicated.

Therefore, to this extent, Plaintiff's motion to limit evidence, examination and testimony on this point should be DENIED.

**FIFTH MOTION TO EXCLUDE TESTIMONY OF ANDREW MYCHALOWYCH [D.E. 169]**

This is addressed in Defendants' separate memorandum of even date.

**SIXTH MOTION TO EXCLUDE TESTIMONY OF MEGHAN CASSIDY [D.E. 170]**

Plaintiff's claim that Ms. Cassidy has no knowledge relevant to this case outside information gained in the context of this litigation is untrue. *See, e.g.*, Depo. of Meghan Cassidy [D.E. 125] at 18:17-19:22, 21:11-21:21. And Defendants have no information regarding, nor any concern with, whether or not Ms. Cassidy will "act as an advocate at trial." Any ethical questions such representation might raise under the Rules of the Florida or Michigan Bar will presumably be resolved between Plaintiff and her counsel.

Nonetheless, as stated at the pretrial conference before this Court held February 15, 2008, Defendants do not intend to call Meghan Cassidy as a witness or introduce her deposition testimony at trial. Naturally, if Plaintiff introduces evidence from or relying on Ms. Cassidy, Defendants reserve the right to call her in order to impeach such evidence.

If that should become necessary – which Defendants do not anticipate – then it is important to note that Plaintiff's contention that evidence of a party's intent should be elicited from the party ignores the fact that the party to the Vessel Construction Agreement was a corporate entity, Sumo Yachts, whose "intent" only exists as the intent shown by its agents, including Ms. Cassidy. And Plaintiff's suggestion that Ms. Cassidy's inexperience in yacht construction or finance means that she should not be able to be *questioned* about her inexperience in yacht construction or finance is incoherent. Ms. Cassidy was one of the main representatives of Sumo Yachts over the *entire* course of the relationship with Estaleiro, and if her participation is put at issue by Plaintiff, her acknowledged inexperience, together with her

astonishing ability to forget so many details of her involvement, will be a legitimate area of inquiry. *See id.* at 4:12-4:24, 34:9-37:12.

Therefore, to this extent, Plaintiff's motion to limit evidence, examination and testimony on this point should be DENIED.

**SEVENTH MOTION TO LIMIT EXAMINATION OF EXPERT'S MEASURE OF LOST PROFITS/LOSS OF USE [D.E. 171]**

Plaintiff and her damages expert assert that the Florida statutory prejudgment interest rate would establish her damages for "loss of use" of funds used as collateral for a letter of credit and asks this court to prevent Defendants from questioning her expert regarding his use of this interest rate as a measure of damages. In addition, Plaintiff asks the Court to hold that she is entitled to these damages as a matter of law. What prejudgment interest rate might or might not apply to some portion, if any, of some award Plaintiff might or might not receive is a question of law for the court. *See Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 215 (Fla. 1985). Defendants disagree with Plaintiff that she is entitled to use the Florida statutory prejudgment interest rate to prove the amount of her damages as a matter of law; however, this issue is not appropriately raised by a motion in limine.

Why Plaintiff's expert chose one measure to calculate "loss of use" or lost opportunity damages rather than another, however, goes both to the data the expert was provided by Plaintiff or her counsel, and to that expert's methodology. Plaintiff is understandably anxious not to have this examined, since it will reveal the absurdity of her loss of use claim – a "loss of use" of funds at all times in her own custody and control, and never in the custody or control of any of the Defendants – as a matter of law. But that is no reason to insulate her expert from cross-examination.

It is entirely appropriate and necessary for Defendants' counsel to inquire into why and how Plaintiff's expert applied this Florida damages measure, and why he did not use alternative measures or methodologies. Presentation of those alternative measures or methodologies by way of hypothetical scenarios is a permissible – and indeed inextricable – part of such examination. *See United States v. Henderson,* 409 F.3d 1293, 1300 (11th Cir. 2005) ("[T]he ability to answer hypothetical questions is the essential difference between expert and lay witnesses.") (citation and quotation marks omitted).

Therefore, Plaintiff's motion to limit evidence, examination and testimony on this point should be DENIED.

**CONCLUSION**

For the reasons given above, Plaintiff's motions in limine [D.E.'s 164-67, 170-71] should be DENIED.

*Dated:* February 28, 2008
Miami, Florida

Respectfully submitted,

*s/. Thomas J. Meeks*
Thomas J. Meeks, Esq.
tmeeks@zuckerman.com
Fla. Bar No. 314323
Matthew T. Davidson, Esq.
mdavidson@zuckerman.com
Fla. Bar No. 713821
Jennifer Christianson, Esq.
Fla. Bar No. 589950
jchristianson@zuckerman.com
**ZUCKERMAN SPAEDER LLP**
201 S. Biscayne Blvd.
Miami Center Bldg., Suite 900
Miami, Florida 33131
Tel. (305) 358-5000
Fax (305) 579-9749
*Attorneys for Defendants Estaleiro Itajai S/A, Francisco Wlasek, and Paulo Rolim*

**CERTIFICATE OF SERVICE**

I hereby verify that a true and correct copy of the foregoing was served by mail this 28th day of February, 2008, on all persons on the attached service list.

*s/. Thomas J. Meeks*
Thomas J. Meeks, Esq.

**SERVICE LIST**

Ward v. Estaleiro

CASE NO. 05-61821-CIV-ZLOCH/SNOW

Andrew W. Mychalowych
amychalowych@smvf-law.com
**Haliw, Siciliano, Mychalowych, Van Dusen and Feul, PLC**
37000 Grand River Ave., Suite 350
Farmington Hills, MI 48335
Tel: 248-442-0510
Fax: 248-442-0518
*Attorneys for Plaintiff*

Mark Gottlieb
marc.gottlieb@akerman.com
**Akerman Senterfitt**
350 E. Las Olas Blvd., #1600
Ft. Lauderdale, FL 33301
Tel: 954-463-2700
Fax: 954-463-2224
*Attorneys for Plaintiff*