UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 05-61821-CIV-ZLOCH

JACKIE WARD, AN INDIVIDUAL,                )
                                           )
    PLAINTIFF                              )
                                           )
V.                                         )
                                           )
ESTALEIRO ITAJAI S/A A METALNAVE           )
COMPANY, A BRAZILIAN COMPANY,              )
FRANCISCO WLASEK, AN INDIVIDUAL            )
AND PAULO ROLIM, AN INDIVIDUAL,            )
                                           )
    DEFENDANTS.                            )
_____)

**PLAINTIFF'S OMNIBUS REPLY BRIEF TO DEFENDANTS' OMNIBUS
MEMORANDUM IN RESPONSE TO PLAINTIFF' S MOTIONS IN LIMINE
ONE THROUGH FOUR, SIX AND SEVEN**

**A.   PLAINTIFF'S MOTION IN LIMINE #1 SHOULD BE GRANTED**

    In their Response, the Defendants argue that they should be entitled to introduce evidence that pertains to the damages they claim to have incurred as a result of the alleged Breach by Plaintiff. These damages, Defendants argue, consist of the attorneys fees incurred as a result of the representation of Defendant by Carlos Lobo and his law firm.

    First, Defendants' argument that because the letter written by Carlos Lobo declaring that Plaintiff was in default because she "abandoned" the VCA was written after Plaintiff's letter terminating the Agreement is of no consequence. The Defendants argue that she abandoned the VCA and therefore, are bound by the remedies set forth under the VCA. Therefore, as a matter of law, pursuant to the express terms of the VCA, the Defendants' claims for damages are limited and do not include their demand for attorneys fees as they assert.

    Defendants' argument that even if they were limited in their ability to obtain damages, the Defendants are entitled to present the evidence for purposes of "securing its status as a prevailing party" is also without merit.   In a breach of contract action, one party must prevail. Lucite Ctr., Inc. v. Mercede, 606 So. 2d 492, 493 (Fla. 4th DCA 1992). Accordingly, whether the Defendants were allowed to introduce the damages, (which they are not legally entitled to

under the express terms of the VCA anyway), or not, is of no consequence to "securing their status as a prevailing party". As, in this Breach of Contract action, either the Defendants will lose, or they will win. Accordingly, there is no need to demonstrate through the introduction of evidence regarding damages they are not entitled to receive any way, to establish this. This argument is without merit and accordingly, should be denied.

Finally, as raised by Plaintiff's Motion in Limine, the "evidence" which Defendants' intend on introducing is not admissible on its face. The so called evidence is nothing more than a summary of invoices. Unlike Plaintiffs, who have actually produced the actual invoices, showing the time spent, the activity of the attorneys and the amount charged for each event, with information redacted to protect attorney client privilege. The Defendants, however, have submitted the single page "summary". (Ex. 1). This represents hearsay within hearsay. The Defendants merely submitted a summary table, by month and year and amount.  (Ex. 1). Defendants did not submit the summary pursuant to FRE 1006 and have not made the underlying records available for inspection and copying. Accordingly, the document is inadmissible.

Defendants are not entitled to claim the damages they assert based on the express language of the VCA. Defendants need not present these damages under any theory to establish they are a "prevailing party" should they prevail on their breach of contract claim. Moreover, the document itself is inadmissible hearsay within hearsay and cannot be authenticated in its current form by anyone identified by Defendants as a witness. Accordingly, the document at Exhibit 1 should be stricken and Defendants precluded from presenting any evidence relating to its contents at trial. Plaintiff's Motion in Limine #1 should therefore be granted.

**B.    DEFENDANTS' RESPONSE TO MOTION IN LIMINE #2 IS WITHOUT MERIT**

Contrary to what the Defendants' argue, **whether an agency relationship exists is not automatically considered a question of fact for the Jury to decide.** This is expressly the reason that the Plaintiff brought forth her Motion in Limine #2 in the first place. It is Plaintiff's position that there is absolutely no legal or factual basis upon which a jury could find that Jim Eden was Ms. Ward's agent, as that legal term is used. Plaintiff submits that the evidence relating to whether Mr. Eden was Jackie's Ward's "legal" agent for purposes of Notice under the Agreement is not susceptible to more than one interpretation, Therefore, it is not an issue for the jury, but one for the Court as a matter of law. Folwell v. Bernard By and Through Bernard 477 So.2d 1060, at 1062 (Fla.App. 2 Dist.,1985); Eberhardy v. General Motors Corp.  404 F.Supp.

826, *831 (D.C.Fla. 1975). When a party bearing the burden of proof on an issue, fails to produce any supportive evidence, or when (as here) all of the evidence presented is so univocal that reasonable persons could reach but one conclusion, a question that is ordinarily one of fact becomes a question of law, to be determined by the court. Eberhardy v. General Motors Corp. 404 F.Supp. 826, at 831 (D.C.Fla. 1975).

The purpose for which the Defendants' argue that Eden was Ward's "agent" relates solely to the VCA. (Defendants argue that because she has listed her vessel for sale with Eden now, that this is evidence that he was her "agent" under the VCA in 2005. One has nothing to do with the other.) In fact, Eden was the Broker of Record under the VCA for purposes of selling the trade in Vessel. (Ex. 2). This does not render him her agent for purposes of receiving any "notice" under the VCA as the Defendants wish to argue.

Under Florida law, the party asserting the existence of an agency relationship must prove (1) an acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent. Overseas Private Inv. Corp. v. Metropolitan Dade County 826 F.Supp. 1564, at 1576 (S.D.Fla.,1993).

Defendants offer no evidence of any statement or conduct by Jackie Ward that would lead to anyone remotely believing, thinking or considering that Eden was her agent under the VCA after its execution. Clearly, there is no evidence whatsoever of consent or agreement by Ms. Ward to have Eden act on her behalf. Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 424-425 (1927). (Defendants do not suggest that there is). To the contrary, Eden is, in fact, identified as Defendants' agent under the VCA. (Ex. 2, Art. 23).[1]

In response to the designation of Eden as Defendants' "agent" under the VCA, Defendants cite to Villazon v. Prudential Health Care Plan, Inc. 843 So.2d 842, (Fla.,2003) for the proposition that the designation of Eden as "agent" in the Agreement is not determinative. Villazon is distinguishable. In Villazon, the individuals that were sought to deemed "agents" were identified in the contract as **independent contractors - -not agents** as Mr. Eden is for the Defendants in the VCA. The Court held that independent contractors "may become agents" if a

---

[1] Defendants attempt to downplay this designation in the VCA, claiming he was merely a person to be "carbon copied" on communications under the VCA. Defendants' argument is demonstrative of the lack of merit of their argument in response to Plaintiff's Motion in Limine #2. If the appointment of Eden as the Defendants' agent in writing set forth in the VCA is not enough to prove agency, then there is nothing that the Defendants could present that would prove Eden was Ward's agent for purposes of the VCA.

party can demonstrate a "right" to control. In this case, Eden was already identified as Defendants' "agent". Even if that were not the case, **there is no evidence that exists that Ms. Ward had the right to control Jim Eden.** Accordingly, the Villazon defeats any argument that the Defendants may assert.

Further, Defendants present no evidence in response to Plaintiff's Motion in Limine #2 that would even suggest that Ms. Ward "acknowledged" that Eden was her agent. Defendants show absolutely no evidence of any "acceptance" by Eden or of any alleged control that Ward had over Eden. Instead, they simply argue that agency is a matter of fact for the jury to decide.

Defendants' sole purpose for claiming that Jim Eden was Ms. Ward's agent is to somehow impute knowledge that he received from Defendants to Ms. Ward. However, as shown in Plaintiff's Motion, there are direct statements by Eden that show that he specifically directed the Defendant to keep certain information from Ms. Ward. (Ex. 3). Accordingly, it would unreasonable for the Defendants to claim they believed that he was acting as her agent or otherwise had "apparent authority".

Next, **the email upon which the Defendants rely to suggest that Eden was Ward's agent was never seen by Defendants until discovery in this case!** (Ex. 4). **Defendants do not dispute this fact.** How can Defendants argue, in good faith, that this email formed the basis of their reliance upon their belief that Eden was her agent? They cannot and respectfully, this lack of good faith should not go unnoticed by the Court.

Defendants next argue that Mr. Eden's testimony at deposition should be enough to create an issue of fact as to his agency. Plaintiff submits that this argument is flawed for two reasons. First, while the Defendants cite to Eden's testimony they do not attach the reference. Mr. Eden was asked if he was if he was acting as Ms. Ward's agent during negotiations and leading up to execution of the VCA. He testified "yes." However, no foundation was laid as to what Mr. Eden meant by the use of the term "agent". He was not asked if he had authority to bind Ms. Ward. He was not asked if he was using the term agent synonymously with "broker" or some other term. Further, he was not asked if he considered himself her agent after the VCA was signed or pursuant to the VCA - - which is the basis for which Defendants are attempting to assert agency. (Ex. 5). His testimony, therefore, cannot create an issue of fact, as argued by the Defendants in light of the fact that a) Mr. Eden did not testify he was Ms. Ward's agent as that legal term is understood; b) Mr. Eden did not testify that he had any authority to bind Ms. Ward;

{FT468340;1} 4

c) Mr. Eden did not testify at all using this generic term "agent", that he was Ms. Ward's agent under the VCA or after its execution.

Defendants were placed to task to present <u>evidence</u> in response to Plaintiff's Motion in Limine that would lead any jury to find that an agency/principal relationship existed between Ward and Eden for purposes of notice under the VCA. In Response, the Defendants produced an email, (which was disputed by Ms. Ward's attorney under any circumstance), which was never seen by the Defendants until discovery. Accordingly, the evidence does not create an issue of fact as to "apparent authority". It would have <u>had</u> to have been seen by Defendants before discovery for them to even try to rely on it.

Next, the Defendants cited to Eden's testimony where he uses the generic term "agent" but that term is not qualified at all by Defendants' counsel, (perhaps intentionally), as it is known by all parties involved that had he asked Mr. Eden if he had the legal authority to bind Ms. Ward, Eden would clearly have testified "no." Further, for the purpose which Defendants are trying to invent this agency relationship, (i.e. under the VCA), Eden was not even asked any questions by Defendants in this regard. (Again, perhaps intentionally). (<u>Ex. 5</u>). In addition, the Defendants never even asked Ms. Ward at her deposition, whether she believed or had appointed Eden as her "agent". Instead, Defendants' counsel simply referred to Mr. Eden as "your broker". (<u>Ex. 6</u> pg. 6, 32, 33, 35, 99. (Clearly a difference between a yacht broker and a legal agent).

Further, the issue will be mooted upon the Court's rendering a ruling on the issues of law in this case. Should the Court deem the requests made by the Defendants as <u>amendments</u> as Plaintiff believes it should, then whether Eden was Ward's agent would be irrelevant as Ward was under no duty or obligation to amend her Complaint in the first place.

Plaintiff submits that there is no evidence that exists, and the Defendants have not produced any, that would lead to the conclusion that Eden was Ward's legal agent under the VCA. In other words, the evidence is susceptible to <u>only one</u> conclusion and therefore, it is an issue of law for the Court to decide. <u>Folwell</u> *surpa*. <u>Eberhardy</u> *supra*. Plaintiff's Motion in Limine #2 should therefore be granted. [2]

---

[2] Plaintiff is in the process of obtaining an Affidavit from Eden and will execute one herself to submit to the Court on this issue to dispel any suggestion by Defendants that an issue of fact remained as to whether Ward and Eden and an agent/principal relationship in the legal sense. Eden is prepared to testify as to what <u>he</u> meant by the term "agent" when asked at deposition, that he did not believe that Ms. Ward had the "right to control" him and that he did not believe he had the "right to bind" Ms. Ward. Ms. Ward is prepared to testify that under no circumstance was Eden her "agent' in the legal sense. However, given the very short period of time that Plaintiff had to file her Replies, she

{FT468340;1} 5

C.    **PLAINTIFF'S MOTION IN LIMINE #3**

Defendants claim that they will seek to introduce the evidence of Ms. Ward's net worth and that such evidence is necessary to a) "show that she is a sophisticated business person"; b) "experienced in the banking industry whose advise is widely sought"; and c) that she is "well compensated." Plaintiff submits that not one of the reasons proffered by the Defendants provides a legitimate basis for eliciting this information. Second, that the evidence would be far more prejudicial than probative. Third, that the reasons they seek to elicit the testimony may be proven by other means, less prejudicial and intrusive. Finally, that the reasons they seek to elicit are irrelevant under any circumstance.

The first and second basis proffered: to "show that she is a sophisticated business person", and that she is "experienced in the banking industry whose advise is widely sought" has <u>nothing</u> to do, whatsoever, with Ms. Ward's net worth or wealth. It is not even remotely related and would not under any circumstance, establish these facts for the jury under any circumstance.

The Defendants have no idea (and frankly are not entitled to know), how Ms. Ward came to have substantial net worth. (They did not ask her this at her deposition). The very fact that Ms. Ward may have substantial net worth does not, under any circumstance demonstrate or lead to the conclusion that she is a "sophisticated business person", that demonstrate that she has any "experience in the banking industry". If Defendants wish to establish this, they may do so simply by asking her what business experience she has. Defendants did ask Ms. Ward, minimally, at her deposition, about her experience:

> Q    Now, you've had a successful business career, I know. Have you -- could you give us the benefit of your background in the banking industry?
> A    I am on the board of directors of Bank of America.
> Q    Have you ever been a bank officer?
> A    No, I have not.
> Q    How long have you been on the board of directors of Bank of America?
> A    Since 1994.
> Q    Have you had any background in international yacht financing?
> A    No, I have not.
> Q    Have you ever had a yacht built for you before this instance?
> A    No, I have not. (<u>Ex. 6</u> pg. 5-6).

---

was unable to secure their execution in time for filing. Plaintiff will supplement her Reply with these Affidavits, which should resolve any questions the Court may have in rendering its decision on this matter.

The last reason proffered by Defendants is that Ms. Ward is "well compensated". This is, itself, a prejudicial basis for introduction of this evidence and has nothing to do with the issues to be decided and is on its face, demonstrative of its improper intent.

If Defendants want to ask Ms. Ward questions as to what her knowledge and experience is regarding her "business experience", than they should simply ask her. Whether or not she is wealthy or "well compensated" has no bearing on her experience and more importantly, has <u>nothing</u> to do with whether she acted in "good faith" under the VCA.  Her personal finances are totally irrelevant to this issue and Defendants and inadmissible. FRE 403; <u>Brough v. Imperial Sterling, Ltd.</u>, 297 F.3d 1172, 1178 (11th Cir. 2002) *citing* <u>Batlemento v. Dove Fountain, Inc.</u>, 593 So.2d 234, 241 (Fla. 5th DCA 1991).  To permit such evidence Plaintiff submits, would constitute reversible error. <u>Id</u>. Accordingly, Plaintiff's Motion in Limine #3 should be granted. [3]

**D.    PLAINTIFF'S MOTION IN LIMINE #4**

Defendants claim that the need may arise to refer to prior testimony of other lawsuits referenced by Plaintiff's Motion in Limine #4 for impeachment purposes, refreshing recollection, etc.  However, this need could not possibly arise as there are no transcripts of any proceedings pertaining to the dispute for which Defendants' current counsel acted as counsel in Plaintiff's claim against an Italian yacht manufacturer.  Accordingly, there is no basis to deny Plaintiff's Motion for that reason.

Defendants next reference that it may be necessary to elicit testimony "regarding any of Plaintiff's prior experience negotiating or effectuating the purchasing of yachts, or dealing with yacht brokers or Mr. Eden".   Defendants do not see how this information is relevant, but under any circumstance, Defendants would not need to elicit any evidence or testimony regarding the prior lawsuit to establish these facts. Defendants made a point to ask Ms. Ward questions regarding her damage award and attorneys fees paid in the litigation matter with the Italian yacht manufacturer.  This information is not admissible as it is irrelevant or under any circumstance, more prejudicial than probative.  Accordingly, Plaintiff's Motion in Limine #4 should be granted. [4]

---

[3]  It is incredulous of the Defendants to suggest that <u>they</u> may introduce this type of financial worth evidence which is unrelated to the purpose for which they claim to need it, when the Defendants have resisted at every turn to produce this evidence to Plaintiff even with a punitive damage claim pending against them!

[4]  Plaintiff submits that her Motion should be granted and to the extent at trial the Defendants believe the "need" arises, that they request a side bar conference first.  This would ensure that there is no misunderstanding on

E.   **PLAINTIFF'S MOTION IN LIMINE #6**[5]

Defendants' begin by stating that they do not intend on calling Ms. Cassidy to testify, but then offer alleged reasons as to why Plaintiff's Motion should be denied. In doing so, Defendants cannot resist making personal, and quite unprofessional attacks of Ms. Cassidy in what appears to be a suggestion of dishonesty on her part at deposition. This is highly inappropriate and offensive.

Ms. Cassidy testified that she was a "conduit", providing information back and forth between the parties. She further testified that she offered no legal advice or opinions and was not at all involved in negotiating the VCA. How the Defendants turn this testimony into an allegation that she has some "astonishing ability to forget so many details of her involvement" is not only unprofessional, but unfounded.

Ms. Cassidy testified that the knowledge and information she has in terms of the legal arguments, positions taken and the like, pertains solely to her involvement in the context of this litigation and is therefore privileged.  Mr. Schultz the discovery master agreed on this point, ruling that she should not answer questions that provides her mental thoughts or impressions developed in the context of this litigation. Defendants did not object to this ruling.

Defendants have stated that they do not "intend" on calling Ms. Cassidy as a witness. However, Plaintiff's Motion in Limine #6 seeks to strike Ms. Cassidy as a witness so that there is no surprise at the time of trial, should she be present during the proceedings in a second chair capacity.  Plaintiff submits that her Motion in Limine should be granted.  If the Defendants believe that during the time of trial, that her testimony would be needed, they could then approach the Court to reconsider its ruling.

F.   **PLAINTIFF'S MOTION IN LIMINE #7**

Defendants acknowledge that the statutory interest rate to be applied is a matter of law for the Court to decide.  Accordingly, the Court should render a decision on whether or not the pre-judgment interest rate applied by Plaintiff's expert, Peter Gampel, was correctly applied, as a

---

Defendants' counsel's part as to what testimony may be elicited.  The Court can always permit it during the trial if the "need" is appropriately demonstrated.  However, without an Order expressly preventing the eliciting of such evidence, there is nothing preventing Defendants from attempting to do so.

[5] Defendants' filed a separate Response to Plaintiff's Motion in Limine No. 5.  Accordingly, the Reply to same was filed separately by Plaintiff.

matter of law. (Defendants merely state that they do not believe it proper to have applied this rate, but provide no legal (or factual) basis for the statement).

The case law cited by Plaintiff in her Motion in Limine #7 is not disputed. Under Florida law, prejudgment interest is a part of the restitution a Plaintiff is entitled to for the loss of use of money over the period of time that the party is deprived of the use of that money. Gilliard v. Wright 667 So.2d 815, *816 (Fla.App. 2 Dist.,1995); *See also* Stone v. CompuServe Interactive Services, Inc. 804 So.2d 383, *390 (Fla.App. 4 Dist.,2001). Loss of use of the money is measured by prejudgment interest. Daiwa Products, Inc. v. Nationsbank, N.A. 885 So.2d 884, *891 (Fla.App. 4 Dist.,2004).

Should the Court rule that the prejudgment interest rate relied upon by Plaintiff's expert is not, as a matter of law, appropriate, then the Court should rule so and the proper remedy is to strike that portion of the calculation, and recalculate applying whatever interest rate the Court deems is the proper rate, as a matter of law. If, as the Defendants properly state, what interest rate to apply is a matter for the Court to decide, then their arguments as to why they should be permitted to introduce a table setting forth the Federal judgment interest rate is defeated.

If the Court rules, as a matter of law, that the interest rate applied by Gampel was proper, it would be highly confusing to the jury and improper for them to even be shown any other interest rate by the Defendant. Essentially, the Defendants would be asking Mr. Gampel why he didn't use an interest rate (i.e. the federal judgment rate), that the Court has ruled he should not have used in the first place. There is no reason to elicit this testimony whatsoever, except to cause confusion.

If, however, the Court rules that a different interest rate would apply, then, as Mr. Gampel testified, it would appropriate to recalculate based on that rate. Defendants' suggestion that Plaintiff seeks to prevent the Defendants from introducing the Federal Judgment interest rate table based on a fear that "it will reveal the absurdity of her loss of use claim", is ridiculous. Plaintiff will be presenting the evidence to the Jury no matter what. The issue here is: **What interest rate, as a matter of law, should be applied to Plaintiff's loss of use damages.** Plaintiff submits that the interest rate is, as set forth under Florida Law, the Florida statutory prejudgment interest rate. Daiwa Products, Inc. v. Nationsbank, N.A. 885 So.2d 884, *891 (Fla.App. 4 Dist.,2004).

The federal judgment interest rate exhibit and any questions regarding it are not only irrelevant, but would cause confusion for the Jury. Particularly in light of the fact that in rendering a decision on Plaintiff's Motion in Limine #7, the Court will decide as a matter of law, what interest rate should apply. Accordingly, Plaintiff respectfully requests that this Honorable Court grant her Motion in Limine #7 and in doing so, render a ruling as to what interest rate properly applies to Plaintiff's claim under Florida Law for loss of use of funds.

For the reasons set forth above, and for those set forth in her Motions in Limine found at Docket Entries 164m 165, 166, 167, 170 and 171, hereby incorporated by reference, the Plaintiff respectfully requests that this Honorable Court GRANT all of Plaintiff's Motions In Limine referenced herein.

Respectfully submitted,

| | |
|---|---|
| SICILIANO MYCHALOWYCH VAN DUSEN AND FEUL, PLC | AKERMAN SENTERFITT |
| By: /s/Andrew W. Mychalowych (P39602)<br>Meghan W. Cassidy (P60356)<br>Attorneys for Plaintiffs<br>37000 Grand River Ave., Ste. 350<br>Farmington Hills, MI 48335<br>(248) 442-0510<br>AMychalowych@SMVF-Law.com | By: /s/ Marc Gottlieb<br>Florida Bar No. 827819<br>Co-counsel for Plaintiff<br>305 E. Las Olas Blvd., #1600<br>Ft. Lauderdale, FL 33301<br>(954) 463-2700<br>Marc.gottlieb@akerman.com |

### CERTIFICATE OF SERVICE

I hereby certify that on March 7, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

AKERMAN SENTERFITT

BY: ____/S/ MARC GOTTLIEB____